Daniel **MORPHEW**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 41A05–9601–CR–31.

Court of Appeals of Indiana.

Oct. 29, 1996.

Transfer Denied Jan. 8, 1997.

---

John P. Wilson, Greenwood, for Appellant-Defendant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee-Plaintiff.

## OPINION

SHARPNACK, Chief Judge.

Daniel Morphew appeals his convictions for driving a motor vehicle while suspended as an habitual traffic offender, a class D felony, operating while intoxicated ("OWI"), a class A misdemeanor, and an habitual substance offender enhancement on the OWI, a class D felony. Morphew raises three issues for our review, which we restate as:

(1) whether the evidence is sufficient to support the conviction for driving while suspended as an habitual traffic offender;

(2) whether the trial court erroneously denied his motion to dismiss the amended information for the habitual substance offender charge; and

(3) whether the trial court erroneously enhanced his conviction for operating

while intoxicated by using the habitual substance offender statute.

We affirm.

The facts most favorable to the judgment follow. On June 26, 1993, a police officer observed Morphew driving erratically by swerving off the road, crossing the center line, and driving below the speed limit. When the officer activated his emergency lights, Morphew accelerated to seventy-five miles per hour. The officer continued to follow Morphew for several minutes until Morphew turned into a driveway and stopped the car.

When the officer ordered Morphew to exit the car, Morphew hung onto the car for support and pulled himself out. Morphew was stumbling. He had red, glassy eyes and a strong odor of alcohol surrounding him. Morphew's blood alcohol count was .34% on the alco-sensor test.

As a result of this incident, the State charged Morphew with six counts: (1) OWI, a class A misdemeanor, (2) driving while suspended as an habitual traffic offender, a class D felony, (3) resisting law enforcement, a class A misdemeanor, (4) speeding, a traffic infraction (5) unsafe lane movement, a traffic infraction, and (6) disregarding a stop sign, a traffic infraction. On October 12, 1995, after a jury trial, Morphew was convicted of all counts except the speeding count, which was dismissed by the State. During the second phase of the trial, the jury found Morphew to be an habitual substance offender based upon two prior unrelated convictions.

Later, the trial court sentenced Morphew to one year for OWI, two years for driving while suspended as an habitual traffic offender, and one year for resisting law enforcement. The trial court enhanced the OWI sentence by five years because the jury found Morphew to be an habitual substance offender.

## I.

The first issue for our review is whether the evidence is sufficient to support Morphew's conviction for driving while suspended as an habitual traffic offender. When reviewing a challenge to the sufficiency · of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Washington v. State,* 441 N.E.2d 1355, 1358 (Ind.1982). Rather, we look to the evidence favorable to the verdict, along with any inferences reasonably drawn therefrom. *Vest v. State,* 621 N.E.2d 1094, 1095 (Ind.1993). If there is evidence of probative value from which the reasonable trier of fact could infer that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Id.*

■ The offense of driving while suspended as an habitual traffic offender is governed by Ind.Code § 9–30–10–16, which provides in part that "A person who operates a motor vehicle: (1) While the person's driving privileges are suspended under this chapter; ... commits a Class D felony." I.C. § 9–30–10–16. To support a conviction for this offense, the State must demonstrate that the defendant operated a motor vehicle while the defendant's driving privileges were suspended and that the defendant knew or should have known that those privileges had been suspended as a result of having been determined to be an habitual traffic offender. *Bishop v. State,* 638 N.E.2d 1278, 1279 (Ind.Ct.App. 1994), *reh'g denied.*

■ To demonstrate the defendant knew or should have known that the driving privileges had been suspended, the State must show that the BMV sent a notice of suspension to the defendant's last known address after the BMV determined that defendant was an habitual offender. *Banks v. State,* 567 N.E.2d 1126, 1128 (Ind.1991); *see* I.C. § 9–30–10–5. Proof of mailing the notice is an evidentiary prerequisite to proving that the suspension was valid. *Banks,* 567 N.E.2d at 1128. Morphew contends that the State failed to demonstrate that the BMV mailed the notice of suspension and, therefore, that the evidence is insufficient to support his conviction. We disagree.

Under the rules of evidence, evidence of the routine practice of an organization is relevant to prove that the conduct of the organization on a particular occasion was in conformity with the routine practice. Ind. Evidence Rule 406. In this case, Karen

Cothron, the program coordinator for the BMV, testified for the State about the BMV's routine practice of notifying individuals of their habitual traffic offender status. Cothron testified that once an individual is deemed by the BMV to be an habitual traffic offender, a notice is sent to the individual's last known address as listed in the individual's driving record. The notice states that the individual's driving privileges will be suspended in thirty days for being an habitual traffic offender and that the suspension will last for ten years. Cothron testified that prior to 1988, when a notice of suspension was generated and mailed, a copy of the notice was placed in the individual's file. She also testified that if a notice was returned undelivered, the BMV kept the marked envelope in the individual's file as a record.

In addition, the State introduced a copy of the habitual traffic violator notice of suspension which was placed in Morphew's file. The notice, dated April 15, 1987, indicated that Morphew's driving privileges would be suspended beginning May 15, 1987, for a period of ten years. Cothron testified that she reviewed Morphew's file, but did not find a returned, undelivered envelope. As a result, Cothron stated, "[w]e can only assume [the notice] was received." Record, p. 384.

On review, we consider only the evidence most favorable to the judgment along with the reasonable inferences to be drawn therefrom. *See Vest,* 621 N.E.2d at 1095. Based on the evidence of the BMV's routine practice of mailing notices, we find that the jury could have reasonably concluded that the BMV mailed a notice of suspension to Morphew in conformity therewith. *See* Evid.R. 406; *see Bailey v. State,* 440 N.E.2d 1130 (Ind.1982), *reh'g denied* (holding that evidence of standard office procedure, which required a signed letter to be returned to the secretary for mailing, was sufficient to support the trial court's conclusion that notice had been mailed and received by the defendant.)

Next, Morphew contends that even if the State presented sufficient evidence to support the finding that the BMV mailed the notice of suspension, the notice was not mailed to his last known address. The April 15, 1987, notice of suspension admitted into evidence was addressed to Morphew at R.R. 1 Box 55 in Franklin, Indiana. Morphew argues that his driving record listed R.R. 2 Box 160, Franklin, Indiana, as his most current address and R.R. 1 Box 55 as his previous address.

However, at trial in October of 1995, Morphew's girlfriend testified that she and Morphew had only lived at the R.R. 2 Box 160 address for approximately five and one half years. From this evidence, the jury could reasonably infer that Morphew lived at the R.R.1 Box 55 address in 1987 when the notice was mailed.

Because the State presented evidence to demonstrate that the BMV sent a notice of suspension to Morphew's last known address after determining that Morphew was an habitual offender, we hold that there is sufficient evidence to support Morphew's conviction for driving while suspended as an habitual traffic offender.

## II.

The second issue for our review is whether the trial court erroneously denied Morphew's motion to dismiss the habitual substance offender allegations. During the second phase of the trial on October 13, 1995, Morphew was tried for the habitual substance offender charge. This charge is governed by I.C. § 35-50-2-10, which provides in part:

"(b) The state may seek to have a person sentenced as an habitual substance offender for any substance offense by alleging . . . that the person has accumulated two (2) prior unrelated substance offense convictions.

\* \* \* \* \* \*

(e) A person is an habitual substance offender if the jury . . . finds that the state has proved beyond a reasonable doubt that the person has accumulated two (2) prior unrelated substance offense convictions.

(f) The court shall sentence a person found to be an habitual substance offender to an additional fixed term of at least three (3) years but not more than eight (8) years imprisonment, to be added to the term of

imprisonment [for the underlying conviction]."

I.C. § 35–50–2–10(b), (e), (f). A "substance offense" is defined as a class A misdemeanor or a felony "in which the possession, use, abuse, delivery, transportation, or manufacture of alcohol or drugs is a material element of the crime." I.C. § 35–50–2–10(a)(2).

■ During this portion of the trial, the State established that Morphew was convicted of OWI on June 25, 1981, and that he was again convicted of OWI on January 21, 1987. Outside the presence of the jury, Morphew admitted that he was convicted of OWI, a class A misdemeanor, on June 25, 1981. Morphew testified that he was not represented by an attorney because he did not have any money and that he was not advised about his right to be appointed a public defender. After Morphew testified, he moved to dismiss the habitual substance offender charge on the basis that the 1981 conviction could not be considered a "substance offense" under the habitual substance offender statute. In support, Morphew relied upon *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980) and *Frame v. State*, 587 N.E.2d 173 (Ind.Ct.App.1992), *reh'g denied.* The trial court denied his motion.

In a fragmented opinion in *Baldasar*, the Supreme Court held that a defendant's prior uncounseled class A misdemeanor conviction could not be used under Illinois' enhanced penalty statute to convert a subsequent misdemeanor into a felony conviction. *Id.* at 224, 100 S.Ct. at 1586. More recently, this court analyzed the *Baldasar* opinion and attempted to extract a rule of law from it. *Frame*, 587 N.E.2d at 175. We concluded that where an indigent defendant is not afforded counsel on a misdemeanor charge, a resulting conviction from that misdemeanor charge "may not be used to deprive the defendant's liberty at a later proceeding, such as the enhancement for a subsequent offense resulting in a prison term greater than that which would have been handed down, but for the uncounseled conviction."

*Id.* at 176. However, we noted that a defendant who relies on an uncounseled conviction to avoid an enhanced sentence for a subsequent conviction must demonstrate that he was indigent, was not represented by counsel, and did not execute a waiver of the right to counsel. *Id.* at 177. We held that Frame properly alleged a *Baldasar* violation, but failed to prove that he was indigent, that he was not represented by counsel, or that he did not waive the right to counsel. *Id.*

Recently, the Supreme Court overruled the *Baldasar* opinion in *Nichols v. U.S.*, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). In *Nichols*, the Supreme Court held that a sentencing court may consider a defendant's uncounseled misdemeanor conviction to enhance the sentence for a subsequent conviction so long as the prior uncounseled misdemeanor conviction did not result in a prison sentence. *Id.* at 747–748, 114 S.Ct. at 1928. The Court reasoned that:

> "Sentencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior. We have upheld the constitutionality of considering such previous conduct. . . .
>
> Thus, consistently with due process, petitioner in the present case could have been sentenced more severely based simply on evidence of the underlying conduct which gave rise to the previous DUI offense. . . . Surely, then, it must be constitutionally permissible to consider a prior uncounseled misdemeanor conviction based on the same conduct where that conduct must be proven beyond a reasonable doubt."

*Id.*

We find the *Nichols* holding to be applicable to the present case.[1] Morphew testified that his prior class A misdemeanor conviction for OWI was uncounseled. Morphew was not incarcerated for this conviction, but was fined $90 and issued a probationary driver's license. Because Morphew did not receive a prison sentence for his prior uncounseled

---

1. Because our decision in *Frame* relied almost exclusively on *Baldasar* and because *Baldasar* has now been overruled, we do not find the analysis in *Frame* to be applicable. In addition, we note that Morphew neither disclosed the subsequent history of *Baldasar* to this court nor addressed the continued viability of *Frame* in light of that history.

class A misdemeanor, the trial court properly considered that conviction when it enhanced Morphew's sentence for the subsequent OWI offense under the habitual substance offender statute. Accordingly, the trial court properly denied Morphew's motion to dismiss the habitual substance offender charge.

## III.

The final issue for our review is whether the trial court erroneously enhanced Morphew's OWI conviction pursuant to the habitual substance offender statute, I.C. § 35–50–2–10. Briefly restated, this statute allows the trial court to sentence a person found to be a habitual substance offender to an additional term on the subsequent substance offense to at least three years but not more than eight years. I.C. § 35–50–2–10(f). An individual is an habitual substance offender if the person has accumulated two prior unrelated substance offense convictions. I.C. § 35–50–2–10(e). A "substance offense" is any class A misdemeanor or felony where the "possession, use, abuse, delivery, transportation, or manufacture of alcohol is a material element of the crime." I.C. § 35–50–2–10(a)(2).

Morphew claims the trial court erroneously enhanced his OWI misdemeanor sentence pursuant to this statute. Instead, Morphew argues that the only enhancement to which he was subject was the provision set forth in I.C. § 9–30–5–3. This section provides that:

"A person who violates ... [IC 9–30–5–1 or 9–30–5–2] of this chapter commits a Class D felony if:

(1) The person has a previous conviction of operating while intoxicated; and

(2) The previous conviction of operating while intoxicated occurred within the five years (5) immediately preceding the occurrence of the violation of [I.C. § 9–30–5–1 or I.C. § 9–30–5–2]."

I.C. § 9–30–5–3. This statute may be used to enhance the penalty for a subsequent OWI offense. In addition, Morphew cites *Freeman v. State*, 658 N.E.2d 68 (Ind.1995) in support of his claim that the habitual substance offender statute does not apply to an OWI conviction.

In *Freeman*, our supreme court reviewed the overlap between I.C. § 9–11–2 (now codified at I.C. § 9–30–5) and I.C. § 35–50–2–10. The court noted that a person convicted of repeated offenses could be subject to the enhancement provision of both statutes. However, the court addressed whether the legislature intended such a result:

"The legislature is presumed to have existing statutes in mind when it adopts new law. When the statutes cannot be harmonized, however, and the legislature dealt with a subject in a detailed manner in one statute and in a general manner in the other, the detailed statute will supersede the general one.

The two statutes at issue are difficult to harmonize. Both constitute a progressive scheme of justice which attaches at the defendant's first O.W.I. conviction. Construing these statutes somehow to operate consecutively would eliminate each statutes' language pertaining to its starting point—the first conviction.... We therefore turn to the question of which enhancement the legislature intended courts to employ for O.W.I. repeaters."

*Id.* at 70. The court concluded that the legislature did not intend to subject the repeat offender to both enhancement provisions. As such, the court set out to determine which enhancement provision applied to OWI offenders.

The court reviewed the statutory framework of I.C. § 9–30–5 (then I.C. § 9–11–2) and found that the statutory scheme provided a system of progressive punishment based upon the frequency and severity of a defendant's prior OWI convictions. In addition, the court noted that "repeated violators of [I.C. § 9–30–5] that fall within the short, statutorily defined periods designated in Section 9–12–1–4 [recodified at I.C. § 9–30–10–4] subject a defendant to sentence enhancement as a 'habitual violator.'" *Id.* at 71; *see* I.C. § 9–30–10–4. Once adjudicated an "habitual violator," the court can enhance the defendant's subsequent sentence even more severely.

In contrast, the court noted that I.C. § 35–50–2–10 broadly defines the activities subjecting a defendant to enhancement by up to eight years, but does not provide for further progressive punishment, regardless of the frequency or severity of the subsequent offenses. *Freeman*, 658 N.E.2d at 71. The

court concluded that the schemes in I.C. § 9–30–5 and 35–50–2–10 are "markedly different," because the former is more detailed and specific while the latter remains a general prohibition on repeat offenses regardless of their severity. *Id.* Therefore, the *Freeman* court held that the more detailed scheme superseded the general one and that the only enhancement to which Freeman should have been subject was the provisions codified in I.C. § 9–11–2 (now I.C. § 9–30–5). *Id.*

The State claims the *Freeman* holding is inapplicable here because the more specific statutory framework of I.C. § 9–30–5 does not apply in Morphew's case. Morphew was previously convicted of OWI in 1981 and then again in 1987. Morphew's current conviction for OWI occurred in 1995, more than eight and a half years after his last OWI conviction. Because Morphew's most recent conviction did not occur within five years of his prior conviction, the enhancement of the most recent conviction is not proper under I.C. § 9–30–5–3. *See* I.C. § 9–30–5–3. Therefore, the State concludes that because I.C. § 9–30–5–4 could not serve as the enhancement for Morphew's current conviction, the habitual substance offender statute applies. "[T]he substance offender statute applies to cases like the present, where an offender has two prior unrelated substance-abuse offenses but the more specific language of I.C. § 9–30–5–3 does not apply." Appellee's brief, p. 11. We agree.

We find *Freeman* inapplicable to a case where both enhancement provisions do not apply. As always, the primary goal when construing a statute is to determine and effect the legislative intent. *Camden v. Gibson Circuit Ct.*, 640 N.E.2d 696, 700 (Ind.1994). We think it clear that the legislature did not intend for a repeat OWI offender to not be subject to any enhanced sentence merely because the specific provisions of I.C. § 9–30–5 do not apply. Therefore, we find that the general enhancement provision of I.C. § 35–50–2–10 applies in instances where the specific scheme provided by I.C. § 9–30–5 is inapplicable. *See Haymaker v. State*, 667 N.E.2d 1113, 1115 (Ind.1996) (holding that where the current convictions are not already enhanced by a specific habitual offender scheme, the use of the general habitual offender statute is proper because it would not result in a double enhancement of the convictions). As a result, we hold that the trial court properly enhanced Morphew's sentence pursuant to I.C. § 35–50–2–10.[2]

For the foregoing reasons, we affirm the judgment of the trial court in all respects.

AFFIRMED.

RUCKER and FRIEDLANDER, JJ., concur.

---

2. The habitual substance offender statute has since been amended and went into effect on July 1, 1996. The amended statute defines a substance offense as a class A misdemeanor or felony "in which the possession, use, abuse, delivery, transportation, or manufacture of alcohol or drugs is a material element of the crime. *The term includes an offense under IC 9–30–5 and an offense under IC 9–11–2 (before its repeal July 1, 1991)."* I.C. § 35–50–2–10(a)(2) (Supp.1996) (emphasis added). Thus, according to the amendment, an habitual substance offender includes any person twice convicted of OWI. *Id.; see* I.C. § 9–30–5–2. However, the amended statute was not in effect at the time of Morphew's conviction and, therefore, it does not apply to this case.